**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD GRIMES, et al., : | |
| : | CIVIL ACTION NO. 08-567 (MLC) |
| Plaintiffs, : | |
| : | **MEMORANDUM OPINION** |
| v. : | |
| : | |
| CORRECTIONAL MEDICAL : | |
| SERVICES, et al., : | |
| : | |
| Defendants. : | |

**COOPER, District Judge**

The plaintiffs, Edward Grimes ("Grimes"), John Tell ("Tell"), and William Engel ("Engel") ("plaintiffs") brought this action in February 2008 alleging, inter alia, malpractice and negligence ("malpractice") by the defendants.  (Dkt. entry no. 1, Compl. at 42.)  The defendants Correctional Medical Services ("CMS"), Joseph Girone, Allen Martin, Grace Melendez ("Melendez"), Donique Ivery, Jawana Bethea, Jason Pugh, and Ihuoma Nwachukwu now separately move for summary judgment in their favor on the plaintiffs' malpractice claim.  (Dkt. entry no. 55, First CMS Br.; dkt. entry no. 56. Second CMS Br.; dkt. entry no. 57, Third CMS Br.)  The Court determines the motions on the briefs without an oral hearing, pursuant to Federal Rule of Civil Procedure ("Rule") 78(b).  For the reasons stated herein, the Court will deny the separate motions.

**BACKGROUND**

The plaintiffs are currently incarcerated in New Jersey State Prison. Their claims include Eighth Amendment violations for deliberate indifference to serious medical needs, breach of contract, malpractice, and intentional infliction of emotional distress. (Compl. at 22-23.) They contend that the defendants denied them adequate medical care and failed to provide them with prescribed medications in a timely fashion. (Id. at 2-3.)

**I.  Grimes**

Grimes contends that the defendants regularly denied him "life sustaining medications" thereby causing him stress and exacerbating his current health conditions. (Id. at 8.) Grimes asserts that he has been treated for chronic hypertension and asthma for the past fifteen years. (Id. at 17.) He states that he was referred to a cardiologist in 2004 for an irregular heart beat. (Id.) He states that this cardiologist evaluated him and informed him that he had previously suffered a heart attack. (Id.) He states that in June 2006, he received a stent implant and his cardiologist prescribed three different medications that he was to continue taking for the duration of his life. (Id. at 17-18.) He states that CMS continuously failed to provide these medications to him in a timely manner. (Id. at 18.) Grimes states that in September 2007 a nurse recommended that he see a

doctor immediately regarding his "dangerously low" heart rate. (Id. at 19-20.)  He states that the doctor failed to check his heart rate and informed him that the reason for the delay in his prescriptions was that they were not kept in stock because they were too expensive.  (Id. at 20.)  Grimes contends that CMS continuously failed to provide his medication up until the filing of this Complaint.  (Id.)  Grimes alleges that in January 2008 he was without one of his prescriptions for a month's time.  (Id. at 21-22.)  He contends that the failure to provide his medications in a timely manner has caused swelling, angina, and depression. (Id. at 22.)

**II.  Tell**

Tell states that he suffers from hepatitis C that the defendants have failed to treat.  (Id. at 9.)  He alleges that he suffered from angina pain in 2000 and CMS refused to treat his complaints of this pain for over a year.  (Id. at 24-25.)  He states that he was finally seen after a year, and three of his arteries were impaired and blocked and he had to undergo emergency bypass surgery.  (Id. at 25.)  He alleges that in June 2002, he saw his medical records on a computer screen and noticed that he was positive for hepatitis C.  (Id. at 26.)  He states that he submitted a medical request form requesting to speak with someone about his hepatitis C.  (Id.)  He states that he was seen by a doctor after that but the doctor refused to discuss the

hepatitis.  (Id.)  Tell states that he then requested his medical records but the hepatitis results were not included in the records.  (Id. at 27.)  He states that he submitted an administrative remedy form seeking these missing records.  (Id.)  He states that he found an entry in these records indicating that he tested positive for hepatitis C in 1996, but CMS did not inform him of this result.  (Id. at 28.)  He alleges that CMS's failure to inform him of and treat his hepatitis has resulted in an inability to treat him currently.  (Id.)

   Tell states that on October 19, 2004 he went to the hospital for an evaluation and a cardiologist ordered pain management for him in the form of a narcotic painkiller and instructed him not to take non-steroidal anti-inflammatory drugs.  (Id. at 30.)  He alleges that these medicinal recommendations were not entered into his prison medical records.  (Id.)  He states that he submitted many forms requesting that this information be added, and that it was finally entered into his records in December 2006.  (Id.)  He alleges that in January 2006, he experienced tachycardia.  (Id. at 31.)  He states that after this incident he was sent back to the hospital where he was ordered to remain on pain medication recommended by the cardiologist.  (Id.)  He contends that these medications were discontinued and he began to suffer severe back pain and rising blood pressure that triggered angina.  (Id.)  He states that in February 2006, Melendez refused

4

to refill his heart medication.  (Id.)  He then alleges that between March 2006 and October 2006, the defendants continuously deprived him of the pain medications ordered by his cardiologist. (Id. at 32-35.)  He states that despite the different medications he was prescribed, his cardiologist's recommendations regarding pain management were not followed.  (Id. at 33.)

Tell next contends that in April 2007, he began receiving Vicodin twice daily.  (Id. at 38.)  He states that during the time between his dosages, he would experience rises in his blood pressure.  (Id.)  He states that in 2007 the pain medication treatment ordered by his cardiologist was discontinued and replaced with ibuprofen.  (Id. at 39.)  He states that the failure to provide his medications continued through 2007 and 2008.  (Id. at 40.)  He contends that his hypertension is exacerbated due to his inadequate treatment, which has caused damage to his heart and serious emotional distress.  (Id. at 9.)

### III. Engel

Engel contends that he suffers from diabetes mellitus, asthma, retinopathy, presbyopia, hypermetropia, cataracts, sinusitis, chronic lower back pain, and debilitating gout.  (Id. at 44.)  He states that he has prescription medicines for all of these conditions.  (Id.)  He alleges that CMS frequently runs out of medications.  (Id. at 45.)  He states that in December 2006, he was without his heart medication for five weeks.  (Id.)  He states that he suffered a heart attack as a result.  (Id.)  He

contends that in January 2007, he ran out of pain and blood pressure medication. (Id.) He states that he filed an administrative remedy form on February 21, 2007 because he was constantly out of his medications. (Id.) He states that on March 1, 2007, he was informed that his medications had been ordered. (Id. at 46.) He states that he continued to run out of his medications through November 2007. (Id. at 46-47.) He alleges that in July 2007 he had a tooth extracted without the pre-extraction anti-biotic normally given to heart patients causing him to become ill. (Id. at 46.) Engel contends that in December 2007, he suffered from pain and swelling due to his gout. He states that he was not seen by medical staff for this for seven days. (Id. at 47.) He contends that when he was finally seen for his condition, he was denied pain medication. (Id. at 48.) He states that this incident confined him to a wheelchair because of the pain he was in. (Id.)

## DISCUSSION

I.  Motions for Summary Judgment

   A.  Summary Judgment Standard

The standard for a motion for summary judgment is well-settled and will be briefly summarized here. Rule 56(c) provides that summary judgment is proper if the pleadings, the discovery and disclosure materials, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In

making this determination, the Court must "view[] the record in the light most favorable to the non-moving party and draw[] all inferences in that party's favor."  United States ex rel. Josenske v. Carlisle HMA, Inc., 554 F.3d 88, 94 (3d Cir. 2009) (citing Abramson v. William Patterson Coll., 260 F.3d 265, 276 (3d Cir. 2001)).

**B.    The New Jersey Affidavit of Merit Statute**

The New Jersey Affidavit of Merit Statute provides that a plaintiff alleging medical malpractice or negligence must:

> within 60 days of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.

N.J.S.A. § 2A:53A-27.  The Court may grant an additional sixty days to file the affidavit, if the plaintiff demonstrates "good cause."  Id.  The plaintiff need not comply with the affidavit requirement if he or she provides a sworn statement that (1) the plaintiff sent a written request for medical records to the defendant, (2) the defendant failed to provide the requested medical records within 45 days of the request, and (3) the requested medical records have a "substantial bearing" on preparation of the affidavit.  N.J.S.A. § 2A:53A-28.  If the plaintiff fails to submit the required affidavit or a statement that the defendant did not provide requested medical records,

7

then the plaintiff is deemed to have failed to state a cause of action.  N.J.S.A. § 2A:53A-29.

There is a common knowledge exception to the affidavit of merit requirement.  Hubbard v. Reed, 774 A.2d 495, 500-01 (N.J. 2001); see also Natale v. Camden County Corr. Facility, 318 F.3d 575, 580 (3d Cir. 2003).  This exception applies where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of the specialized knowledge of experts."  Hubbard, 774 A.2d at 499 (quotation and citation omitted); see also Palanque v. Lambert-Woolley, 774 A.2d 501, 506 (N.J. 2001) (stating that in common knowledge cases "[b]ecause defendant's careless acts are quite obvious, a plaintiff need not present expert testimony at trial to establish the standard of care").  In a common knowledge case, whether a plaintiff's claim satisfies the threshold of merit is apparent from the face of the complaint.  Palanque, 774 A.2d at 506.  The common knowledge exception is narrowly construed to avoid non-compliance with the statute.  Hubbard, 774 A.2d at 501.

**II.  Current Separate Motions**

The moving defendants assert that summary judgment should be granted in their favor on the malpractice claim because the plaintiffs failed to serve an affidavit of merit.  (First CMS Br. at 5; Second CMS Br. at 6; Third CMS Br. at 5.)  The plaintiffs

8

contend that their allegations fall within the "common knowledge" exception to the affidavit of merit requirement. (Dkt. entry no. 58, Pl. Br.) The plaintiffs further contend that the doctrine of res ipsa loquitur also applies to their claims. (Id. at 2.) They allege that the defendants deprived them of life-sustaining medications and such deprivation falls into the common knowledge exception. (Id. at 5.) The plaintiffs further contend that they should be permitted to file a sworn statement in lieu of an affidavit of merit as the defendants failed to comply with their requests for medical records prior to the commencement of this action. (Id. at 9.) The Court does not address this argument as it finds that the plaintiffs' allegations fall within the common knowledge exception to the affidavit of merit requirement.

The moving defendants state that the common knowledge exception to the affidavit of merit rule does not apply to the plaintiffs' action. (Dkt. entry no. 61, Def. Reply Br. at 2.) They state that expert testimony is required to determine the adequacy of the plaintiffs' allegations. (Id. at 3.) They allege that determining the frequency and dosage of medication is within the province of a physician expert's knowledge, not a lay juror. (Id. at 3-4.) They contend that "the standard for safe administration of medication" is to be determined by an expert. (Id. at 4.)

9

The Court finds that the plaintiffs' claims fall within the common knowledge exception to the affidavit of merit statute and will deny summary judgment in favor of the defendants on this claim. Each plaintiff alleges that the defendants failed to provide them with their prescribed medication in a timely manner. In <u>Jackson v. Fauver</u>, "the district court . . . found the common knowledge exception applicable where the defendants . . . failed to timely provide the plaintiffs with medicines which had been prescribed." <u>Lopez v. Corr. Med. Servs.</u>, No. 04-2155, 2006 WL 1722584, at *4 (D.N.J. June 20, 2006). "A reasonable jury would not need the assistance of an expert to conclude that CMS personnel were negligent when they allegedly failed both to provide these plaintiffs with medical care prescribed for them by their treating specialists and to follow the medical instructions of these specialists." <u>Jackson v. Fauver</u> 334 F.Supp.2d 697, 743 (D.N.J. 2004). "'Common sense . . . would tell a layperson that medical personnel charged with caring' for an inmate with a serious medical need should provide this inmate his prescribed treatment in a timely fashion." <u>Jackson</u>, 334 F.Supp.2d at 743 (D.N.J. 2004) (citing <u>Natale</u>, 318 F.3d at 580). "[T]he key is that medical care was ordered by or prescribed by 'treating specialists' and then, due to alleged negligence, that care was not rendered or completed in a timely manner." <u>Bryan v. Shah</u>, 351 F.Supp.2d 295, 302 (D.N.J. 2005).

Grimes asserts that the defendants failed to timely provide him with medications prescribed by his cardiologist.  (Compl. at 19-20.)  Tell alleges that a cardiologist ordered pain management treatment for him and the defendants failed to provide it.  (Id. at 30.)  Engel contends that CMS continuously fails to provide him with his prescriptions in a timely manner.  (Id. at 45.)  The plaintiffs have all alleged that the defendants failed to provide them with their prescribed treatment in a timely fashion.  This failure falls into the common knowledge exception to the affidavit of merit requirement, and summary judgment cannot be granted in favor of the defendants on the malpractice claim.

## CONCLUSION

The Court, for the reasons stated supra, will deny the motion for summary judgment on the malpractice claim.

                                          s/Mary L. Cooper  
                                        **MARY L. COOPER**  
                                        United States District Judge  
Dated:    February 8, 2010