UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **EDWARD GRIMES, et al.,** | Civil Action No. 08-567 (MLC) |
| Plaintiffs, | |
| v. | **ORDER AND OPINION DENYING MOTION FOR LEAVE TO AMEND** |
| **CORRECTIONAL MEDICAL SERVICES, et al.,** | |
| Defendants. | |

Presently before the Court is a motion brought by Plaintiffs *pro se* Edward Grimes, John Tell, and William Engel ("Plaintiffs"), seeking leave of the Court to amend the Complaint. Docket Entry No. 129. The proposed Amended Complaint (the "2011 PAC") would add 14 new defendants, several new claims including violation of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), violation of the New Jersey RICO statute, N.J.S.A. 2C:41-1, *et seq.*, violation of public policy regarding the medical care of state prison inmates, violation of the New Jersey Constitution, violation of the Fourteen Amendment of the United States Constitution, and breach of contract against proposed new defendant, University of Medicine and Dentistry of New Jersey ("UMDNJ"), as well as a request for additional relief including a preliminary injunction against all Defendants. Plaintiffs also seek to add new factual allegations and theories of liability. Defendants, Correctional Medical Services, Inc. ("CMS"), Joseph Girone, M.D., Allan Martin, M.D., Ihuoma Nwachukwu, M.D., Grace Melendez, M.D., Donique Ivery, N.P., Jawana Bethea and Jason Pugh, (collectively, the "CMS Defendants") oppose the motion on the grounds of undue delay and accompanying bad faith in that delay, undue prejudice, and futility. See CMS Brief in Opposition ("CMS Opp.") at

Docket Entry No. 138; CMS Sur-Reply ("CMS Sur-Reply") at Docket Entry No. 145; CMS Supplemental Brief in Opposition ("CMS Supp. Opp.") at Docket Entry No. 147.  Defendants George Hayman, as Commissioner of the Department of Corrections (the "DOC") and Michelle Ricci, as Administrator of the Prisons (collectively, the "DOC Defendants"), also oppose the motion on the grounds that the motion is untimely, unduly prejudicial, and futile.  See DOC's Brief in Opposition ("DOC Opp.") at Docket Entry No. 140; DOC Supplemental Brief in Opposition ("DOC Supp. Opp.") at Docket Entry No. 146.  For the reasons stated below, Plaintiffs' motion is DENIED.

I.      Statement of Facts and Procedural History

   A.      The Original Complaint

Plaintiffs filed their original Complaint on or about February 1, 2008 (the "Complaint"), setting forth allegations that Defendants[1] deprived Plaintiffs, as inmates of the New Jersey State Prison ("NJSP"), of vital medications, and caused them severe pain, lasting negative health consequences, and emotional harm.

Plaintiffs state that the DOC contracted with CMS, a private medical services provider, to provide medical care to inmates incarcerated in NJSP.  Complaint ¶¶ 64-65.  Plaintiffs suffer from a multitude of health issues, which require frequent interaction with the prison medical system.  See Complaint ¶¶ 68-77, 108-128, 199-201.  Each Plaintiff suffers from severe heart problems in addition to several other illnesses, and Plaintiffs describe in the Complaint the many medications they must each take to control these health conditions.  Id.  Plaintiffs maintain that their complicated medical histories make it necessary to keep their medication regimens as

---

[1] For purposes of this Order, CMS and DOC are referred to collectively as "Defendants."

prescribed by their specialists, and that any lapse in the dosage will cause them harm and could potentially lead to death. See Complaint ¶ 238.

Plaintiffs allege that CMS and its employees: 1) failed to adequately provide Plaintiffs with their prescribed medications; 2) altered or ignored prescriptions and advice of specialists; and 3) retaliated against Plaintiffs for disagreeing with the staff or treatment given. See, e.g., Complaint ¶¶ 86-96, 142, 147, 164, 204-205, 224-225.  Furthermore, Plaintiffs claim their administrative remedy forms to both CMS and the DOC have either gone unanswered or been returned unaddressed, and that the DOC Defendants have failed to adequately ensure that proper medical services were being provided. See, e.g., Complaint ¶¶ 12-41.

Plaintiffs allege that Defendants, through their actions and inactions, have violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment.  Additionally, Plaintiffs claim CMS violated its contract with the DOC to provide adequate medical services, and Plaintiffs assert that they were the intended beneficiaries of that contract.  Finally, Plaintiffs seek damages and relief based on negligence and intentional infliction of emotional distress. Plaintiffs pray for compensatory and punitive damages, and a permanent injunction which orders Defendants to "1) immediately comply with all recommendation by medical specialists for a treatment plan with (sic) includes pain management; 2) keep all prescriptions up to date; 3) find the present remedy system null and void, and implement a system where the prisoner retains a copy of any remedy filed for proof of filing; 4) waive all fees for medical treatment for chronic care; and, 5) Allow patient to refuse placement in the infirmary." Complaint ¶ 240.

On May 2, 2008, the Court proceeded the Complaint after it was screened in accordance with 28 U.S.C. § 1915.  Docket Entry No. 5.  Prior to this date, the CMS Defendants filed a

3

motion to sever the case, requesting that each Plaintiff prosecute his own action. Docket Entry No. 3. On July 7, 2008, Plaintiffs filed a brief in opposition to the motion to sever and a cross-motion to amend the complaint and appoint *pro bono* counsel. Docket Entry No. 7.

### B. The 2008 Proposed Amended Complaint

In their first proposed Amended Complaint (the "2008 PAC"), Plaintiffs sought to add a significant number of new defendants, causes of action, and theories of liability, as well as an additional named plaintiff, with whom they sought class certification on behalf of all current and released inmates of NJSP who had been denied adequate medical treatment.

Two of the new causes of action in the 2008 PAC asserted violations of the federal and state RICO statutes. Plaintiffs claimed that the medical staff refused to disburse medications and then falsified Plaintiffs' medical records by marking the files to reflect that the medications were distributed. See, e.g., 2008 PAC ¶ 70. According to Plaintiffs, CMS Defendants engaged in wire and mail fraud when the falsified medical records were transmitted to CMS headquarters and other CMS centers out of state. See 2008 PAC ¶¶ 195-198. Plaintiffs contended in the 2008 PAC that the CMS Defendants omitted information in their medical records from their specialist physicians or otherwise altered Plaintiffs' records in order to funnel prescriptions through the CMS-owned pharmacy. See 2008 PAC ¶¶ 67-71.

In addition to the RICO claims, Plaintiffs sought to add new causes of action and new theories of liability for violation of their Fourteenth Amendment rights, medical malpractice, violation of the New Jersey Constitution, and violation of several state and federal statutes which Plaintiffs argued represented the public policy with regard to providing medical care in state prisons. Plaintiffs claimed that not only did the CMS Defendants fail to provide necessary

4

medical services and engage in racketeering activity, but that the DOC Defendants knew about the CMS Defendants' activity and failed to enact policies to rectify and prevent these wrongs against Plaintiffs. 2008 PAC ¶¶ 71, 75-87.

Finally, Plaintiffs sought to expand their prayer for relief in the 2008 PAC to request the appointment of a special master to preside over the DOC medical programs, and that the Court grant a preliminary injunction in addition to the permanent injunction previously sought, with the additional conditions of requiring Defendants to provide Tell and Engel with their requested medical aids (such as special chairs and mattresses), to refrain from retaliating against Plaintiffs, to provide Plaintiffs with medications as prescribed by their doctors, and to utilize local pharmacies if the medications could not be timely filled through the CMS pharmacy. 2008 PAC ¶¶ 228-232. Plaintiffs contended that in April of 2008, the DOC signed a new contract with UMDNJ for the provision of all medical services in NJSP, but that UMDNJ would not fully take over until September 2008. 2008 PAC ¶ 54. As UMDNJ had yet to perform under the new contract, Plaintiffs sought only declaratory and prospective relief against UMDNJ. 2008 PAC ¶ 45.

The Court reviewed Defendants' motion to sever in conjunction with Plaintiffs' cross-motion to amend. In an Order dated December 19, 2008, the Court found that requiring each of the three Plaintiffs to proceed separately would "neither assist in the management of the docket nor serve the interests of judicial economy," and therefore denied the CMS Defendants' motion to sever. Docket Entry No. 36. Furthermore, in noting that Plaintiffs' cross-motion depended in part on the outcome of the motion to sever, the Court denied Plaintiffs' cross-motion to amend without prejudice, and expressly granted them leave "to file new motions seeking any relief

sought in the cross-motion as may still be appropriate," in light of the denial of the motion to sever.  Id.  In a footnote, the Court further clarified that the "Plaintiffs should file a separate motion for each type of relief they seek."  Id.

      **C.**     **The 2011 Proposed Amended Complaint**

Following the Court's ruling on the various motions, the parties engaged in discovery.  The parties also conducted extensive motion practice, with the CMS Defendants filing motions for partial summary judgment and Plaintiffs filing motions to compel discovery and for preliminary injunctions.  See Docket Entry Nos. 47, 55-57, 70, 80 and 82.  Due in part to the motion practice and the considerable discovery which was being exchanged, at the request of both sides, the Court entered several Orders extending the time for completion of fact discovery.  See Docket Entry Nos. 51, 67, 91, and 106.  The October 20, 2010 Scheduling Order provided for all fact discovery to be completed by December 1, 2010 and for dispositive motions to be filed no later than December 23, 2010.  Docket Entry No. 106.  The deadline for the filing of dispositive motions was extended to April 8, 2011 by Order dated February 25, 2011.  Docket Entry No. 127.  On February 28, 2011, in all likelihood before Plaintiffs received the Order extending the dispositive motions deadline, Plaintiffs filed both a motion for summary judgement and the instant motion for leave to file the 2011 PAC.

On March 10, 2011, the Court conducted a telephone conference to discuss the timing of the simultaneous motions for summary judgement and leave to amend.  After a discussion on the record, and in consideration of the resources of all the parties and judicial economy, the Court terminated the motion for summary judgment pending resolution of the motion to amend.  See Docket Entry No. 134, Order memorializing the conference.

Plaintiffs' 2011 PAC seeks to add 14 new defendants, five new causes of action, new factual allegations, and several new theories of liability.[2] Much of 2011 PAC overlaps with claims and facts alleged in the 2008 PAC. For example, of the 14 new defendants, seven were named in the proposed 2008 PAC, and *all* of the causes of action Plaintiffs seek to add now were alleged in the 2008 PAC. Some causes of action, however, have been extended to incorporate new defendants and update allegations. For example, Count II Breach of Contract is now alleged against CMS and UMDNJ, as UMDNJ took over medical services in October 2008. See 2011 PAC ¶ 293. Plaintiffs' prayer for relief is almost identical to that in 2008, including the request for preliminary and permanent injunctions. In addition, many of the theories of liability are substantially similar if not identical to those alleged in the 2008 PAC.

## II.   Analysis

A party may amend its pleading as a matter of course within 21 days of service, or if the pleading is one to which a responsive pleading is required, the party may amend as a matter of course within 21 days after the service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Fed. R. Civ. P. 15(a)(1). After such time, a party must seek the written consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Under Rule 15(a)(2), leave should be freely given, and the Third Circuit has taken a

---

[2]In Plaintiffs' brief in support of the 2011 motion to amend, Plaintiffs allege CMS violated "Stark II," in buying Spectrapharm, the pharmacy that provided all of NJSP's medications. Plaint's Brief at 5. "Stark II" apparently refers to 42 U.S.C. § 1395nn, which regulates self-referrals by doctors under the Medicare and Medicaid programs. As this allegation is not in the 2011 PAC and the propriety of the Amendment must be determined on the face of the proposed new pleading, Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc., 106 F.Supp.2d 761 (D.N.J. 2000), the Court does not address the propriety of amending to include a violation of Stark II.

liberal approach on allowing amendments under this rule so that claims may be decided on the merits and not any technicality. Fed. R. Civ. P. 15(a)(2); WHY ASAP, LLC v. Compact Power, 461 F.Supp.2d 308, 311 (D.N.J. 2006). Furthermore, as Plaintiffs are *pro se*, the Court must be mindful to construe the pleadings liberally in favor of Plaintiffs and not hold them to the stringent standards of formal pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Absent "undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment," the court should grant leave to amend. WHY ASAP, 461 F.Supp.2d at 311.

### A.     Undue Delay

Delay alone is insufficient grounds to deny an amendment. Cornell and Co., Inc. v. Occupational Safety and Health Review Commission, 573 F.2d 820 (3d Cir. 2001). However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Adams v. Gould, 739 F.2d 858 (3d Cir. 1984). There is no calendar that marks an amendment's aging from timely to delayed, nor a date at which delay become "undue." See Chisler v. Johnston, 2011 WL 3209092 *3 (W.D. Pa. July 28, 2011). Rather, the court focuses its inquiry on the motives or reasons the moving party failed to amend earlier. Adams, 739 F.2d at 868. A court may deny a motion to amend if the moving party cannot satisfactorily explain its delay. Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J. 1990), citing Leased Optical Dept. v. Opti-Center, Inc., 120 F.R.D. 476, 478 (D.N.J. 1988).

Defendants argue undue delay because the record shows that Plaintiffs could have sought to file the proposed amendments earlier. The baseline for Defendants' opposition is that "the claims which Plaintiffs in 2008 sought to add to this litigation were either similar or identical to

8

the claims which Plaintiffs now seek to add." CMS Opp. at 12. Defendants contend that the similarities between the 2008 and 2011 PACs demonstrate that Plaintiffs had the necessary information to file an amended complaint at an earlier point in the litigation. CMS Opp. at 13. Defendants further point to Plaintiffs' numerous other filings to show that Plaintiffs had ample opportunity and ability to file the motion.   CMS Opp. at 12-14; DOC Opp. at 16.

Plaintiffs allege the delay in filing the 2011 PAC was caused by Defendants themselves, because of what Plaintiffs perceive as Defendants' "unwillingness to answer pro se discovery request[s]."  Plaintiffs' Reply ("Plaints' Reply") at 4.  Plaintiffs describe the various letters and exchanges from June 2009 through June 2010, which include a motion to compel in September 2009, receipt of an 8,000 page document production in September 2009, a second motion to compel in April 2010, and a reformulation of Plaintiffs' interrogatory requests in June 2010. Plaints' Reply at 2-4.  Plaintiffs claim they particularly sought the names of those individuals who withheld or delayed their medications and Plaintiffs specifically cite their request for the work schedules of those nurses who disbursed medications in the unit in which Tell and Engel lived. Plaints' Reply at 3-4.  Plaintiffs state they were waiting for this information to file their amended complaint.  See Plaints' Reply at 4, citing Exhibit 1, Docket Entry No. 143-1, at 68.

Defendants contend that they have produced thousands of pages of medical records and that the discovery at issue, even if delayed, could not form the basis for the proposed amendment. DOC Opp. at 17-18. By way of example, the DOC Defendants cite the specific nurses' shift schedules referenced by Plaintiffs; while Defendants say they have produced many of the other shift records for both CMS and for UMDNJ, the DOC and NJSP did not have those particular records in their custody to produce.  Id.

Plaintiffs offer two other reasons for delay. Tell argues that he was carrying the bulk of the prosecutorial burden and was suffering from health complications that slowed and affected his ability to prosecute the case. Plaints' Reply at 5. Plaintiffs also state they were under the mistaken belief they had until after dispositive motions to amend the complaint. Id.

The Court finds undue delay in Plaintiffs' motion to file the 2011 PAC at this late date in the litigation. Plaintiffs have not explained why they waited more than two years to re-file what are predominantly the same claims and facts asserted in the 2008 PAC. The vast majority of the new allegations are dates and details about when medications were or were not given and interactions with various medical service employees. Essentially, most of the new facts are updates of information in the original Complaint and the 2008 PAC, but not new allegations. Furthermore, these new facts consist of information that was within the control of Plaintiffs and did not require discovery to uncover it. In light of this, the Court finds that the discovery issues allegedly caused by Defendants' resistence in production of documents are insufficient to explain the delay.

As for Plaintiffs' additional reasons for delay, while the Court is sympathetic to the health issues that Plaintiffs suffer, the Court cannot excuse a more than two year delay to amend the Complaint when put in context of Plaintiffs' steady motion practice. Several major motions and declarations have been filed by Plaintiffs since the December 19, 2008 Order. Plaintiffs claimed they have made references to a future amendment, but such references are not enough to put Defendants and non-parties on notice of potential claims which may be leveled against them.

    **B.**    **Unfair Prejudice**

Prejudice to the non-moving party "is the touchstone for the denial of an amendment,"

and a finding of unfair or substantial prejudice is sufficient ground for denial. Cornell and Co., Inc., 573 F.2d at 823; Lorez v. CSX Corporation, 1 F.3d 1406, 1414 (3d Cir. 1993). A finding of unfair prejudice may be made where the non-moving party would be "disadvantaged or deprived of the opportunity to present facts or evidence it would have offered." Harrison Beverage Co., 133 F.R.D. at 468. In evaluating the extent of any alleged prejudice, the court looks to the hardship on the non-moving party if the amendment were granted. Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001). "Specifically, [courts] have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or theories." Cureton, 252 F.3d at 273.

     Defendants argue that Plaintiffs' amendments will prejudice them because of additional discovery that will need to be done, resulting in delays and heightened costs. Defendants cite to the breadth of the new amendments, especially the RICO claims and Plaintiffs' other new theories of liability, and assert that if the amendments were allowed, it "would require a full-scale reopening of discovery." DOC Opp. at 18-19; CMS Opp. at 15. They point to the fact that not only would each new defendant be entitled to conduct discovery on the claims, but each would also be entitled to revisit the discovery already exchanged among the current parties. CMS Opp. at 15.

     Moreover, the DOC Defendants argue prejudice as to the new parties that Plaintiffs seek to add, given that this case has been pending for over three years, and these proposed new parties have not had notice of the claims or an opportunity to prepare a defense. The DOC Defendants conclude that "[m]ost if not all new proposed defendants have had no notice of or reason to know of this action, and as to existing defendants, the new theories of liability, and thus no reason to

11

assume they were mistakenly omitted from it three years ago." DOC Opp. at 19.

Plaintiffs respond that Defendants cannot claim to be surprised by the proposed amendments. Plaintiffs point to both the 2008 PAC and their references over the years to their intention to amend. Plaints' Reply at 5. Thus, Plaintiffs argue they put Defendants on notice of the potential claims. Id.

The Court finds that it would be prejudicial to both the current Defendants and to the new Defendants to allow the 2011 PAC to proceed. Plaintiffs assert several new, unrelated, and complex claims against the current Defendants and also seek to add 14 new Defendants not previously named in this suit. The current Defendants would need to engage in further protracted discovery regarding the new claims, and the new Defendants would have to conduct their own discovery for any claims asserted against them, in addition to accessing all discovery already exchanged among the parties. Parties who have already been deposed would likely need to be re-disposed at substantial additional expense. Discovery in this case has already been an extended and contentious process. Beginning in March 2009, the schedule was extended multiple times, and fact discovery finally closed in December 2010. See Amended Scheduling Orders, at Docket Entry Nos. 44, 51, 67, 79, 91, and 106.

Moreover, when the instant motion was filed, this case was on the threshold of dispositive motions. See Docket Entry No. 127. In fact, Plaintiffs filed their dispositive motion on the same day as their motion to amend, but the Court, after a discussion with the parties, terminated that motion pending the outcome of the motion to amend. See Docket Entry No. 134. Re-opening discovery at this point and to the scale required by the 2011 PAC would in effect reset this case to its inception.

The Court finds that in addition to the prejudice which stems from the cost of discovery, Defendants would be further prejudiced by the delay of the 2011 PAC in their ability to pursue their defenses. This effect is exemplified in Cornell and Co., Inc., 573 F.2d 820, where the moving party, the Occupational Safety and Health Review Commission, sought to amend the Complaint before the administrative law judge to change the underlying theories of liability, several months after the Commission cited Cornell and Co. for violating safety regulations. Id. at 824. The court, in overturning the administrative law judge's grant of leave to amend, found the passage of time had severely eroded Cornell and Co.'s ability to call witnesses and find evidence to defend against the newly added theories. Id. The same holds true here. The majority of the factual allegations refer to incidents in 2006 to 2008. As mentioned by the DOC Defendants, none of the Defendants had reason to believe these new claims would become part of the case after such a long passage of time. Requiring Defendants to begin collecting evidence now to defend against new claims and factual allegations that occurred three to five years ago presents a substantial burden.

The mere fact that Plaintiffs alleged similar if not identical claims in 2008 did not serve to put Defendants on notice or give them an opportunity to prevent prejudice. Since 2008, this case has proceeded on the claims set forth in the Complaint. Discovery has been tailored to these allegations, not the ones alleged in the 2008 PAC. Furthermore, contrary to Plaintiffs' belief, the 2008 motion to amend did not put the proposed new defendants on notice. Nothing in the record reflects that Plaintiffs served each potential new Defendant with a copy of the 2008 PAC, and thus, unless otherwise notified, the new Defendants would have had no knowledge of the claims laid against them in 2008. Accordingly, this Court concludes that allowing the amendments

would prejudice Defendants.

### C. Bad Faith

The CMS Defendants argue that Plaintiffs acted in bad faith in delaying two years before seeking to file the 2011 PAC. Courts looks to the motives of the moving party to determine bad faith. Adams, 739 F.2d at 868. The CMS Defendants make no more than conclusory statements that a two year delay evidences bad faith. Nothing in the record suggests that Plaintiffs operated in bad faith, and the Court therefore declines to find Plaintiffs have acted in bad faith, despite the delay.

### D. Futility

Defendants argue that several of Plaintiffs' claims are futile. Defendants contend that Plaintiffs failed to allege facts which if true would constitute a violation of RICO. See DOC Opp. at 21; DOC Supp. Opp. at 7-10; CMS Supp. Opp. at 9-10. The DOC Defendants also argue that Plaintiffs have no standing to assert claims for third-party benefits under the service contracts with CMS or UMDNJ, nor is there a private cause of action to assert the violations of public policies or the attendant statutory provisions which Plaintiffs cite. DOC Opp. at 22.

The Court determines it need not reach the merits of the futility argument, given its conclusion that the proposed amendments should be denied due to both undue delay and unfair prejudice. For these reasons, as more fully set out above, the Court denies Plaintiffs' motion for leave to amend.

## III. Conclusion

In conclusion, the Court finds that Plaintiffs have not sufficiently explained the lengthy delay in filing a motion for leave to amend the Complaint, given that Plaintiffs were clearly

aware of the claims and the identities of proposed new Defendants that they seek to add now, as early as 2008 as evidenced by the 2008 PAC.  Furthermore, the breadth of new claims and the sheer number of new Defendants would require that discovery not only be re-opened but largely repeated, many months after it was closed.  Accordingly, the Court finds the Plaintiffs' request for leave to amend must be DENIED.

**IT IS** on this **23rd** day of **September, 2011,**

**ORDERED** that Plaintiffs' motion for leave to amend, Docket Entry No. 129, is hereby **DENIED**; and it is further

**ORDERED** that as set forth in this Court's March 24, 2011 Order, Docket Entry No. 134, Plaintiffs are granted leave to re-file their motion for summary judgment upon letter request without having to physically resubmit the papers, or if they choose to modify the motion, they may do so.  In either event, any dispositive motions by either Plaintiffs or Defendants are to be filed by no later than November 23, 2011; opposition is to be filed by no later than December 12, 2011; reply is to be filed by no later than December 27, 2011; and, the motion is to be returnable on January 3, 2012.  There will be no oral argument on the motions unless specifically noticed by the Court.

**LOIS H. GOODMAN**
**United States Magistrate Judge**